**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

**ALAN E. ROBLES,**

**Plaintiff,**

**v.**

**QUIKTRIP CORPORATION,**

**Defendant.**

**1:16-cv-2050-WSD**

## OPINION AND ORDER

This matter is before the Court on Defendant QuikTrip Corporation's (the "Defendant") Motion for Summary Judgment [73].

## I.     BACKGROUND

A.     <u>Facts</u>

1.     <u>The Shooting</u>

The undisputed facts, construed in the light most favorable to Plaintiff Alan E. Robles ("Plaintiff"), show that on the evening of September 6, 2015, Plaintiff, his brother Cesar Robles ("Cesar"), his brother-in-law Victor Sanchez ("Victor"), and Victor's cousins Everet Delgado ("Ever") and Gustavo Delgado ("Gustavo"), visited the QuikTrip gas station located at 93 Upper Riverdale Road in Riverdale, Georgia (the "QuickTrip").  ([73.2] ¶¶ 3, 5-6).  They were all in a white Chevrolet

Avalanche ("truck") driven by Cesar. ([73.2] ¶ 5). Plaintiff sat in the front passenger seat. Id. Victor and his two cousins sat in the back. ([73.2] ¶ 5). Plaintiff does not remember going into the QuikTrip to make a purchase and did not intend to purchase anything at the convenience store. ([73.2] ¶ 88).

Cesar pulled up to the gas pump and began filling up with gas while Victor, Ever, and Gustavo went into the store to purchase beer. ([73.2] ¶¶ 6-7). When Gustavo returned from the store he refused to get back into Cesar's truck and, instead, walked to the front of the store. ([73.2] ¶¶ 9, 10). Victor and Ever left the truck to persuade Gustavo to return and Cesar pulled his truck to the front of the store. ([73.2] ¶¶ 11, 12).

Cesar, Victor, and Ever spent approximately fifteen minutes trying to persuade Gustavo to get into the truck. Plaintiff tried to convince his cousin Victor to do the same. ([81] ¶ 17). There was some arguing with raised voices and physical pushing and shoving. ([73.2] ¶ 18). At one point, Gustavo, Victor, and Ever went into the store where Gustavo asked QuickTrip employee Rodtrese Jones for a phone to call a cab. ([81] ¶ 21).

When they came out of the store, they continued to argue about leaving. ([73.2] ¶ 22). Cesar told Victor he was going to drive off, leaving Victor and his

cousins at the store.  Ever became angry, opened the door of the truck and pointed

a gun at Cesar.  ([73.2] ¶ 26).

When this happened, Plaintiff was standing in front of the driver's door to

Ever's immediate left.  ([73.2] ¶ 27).  Plaintiff disputes whether he saw Ever

brandishing the gun, or even whether he could see the argument taking place.

([73.2] ¶¶ 19, 28-30).  At Plaintiff's deposition, he was shown surveillance footage

and testified as follows:

> Q (counsel):  Okay.  At this point you would have known that the
> gentleman in the black shirt had a gun; right
> A (Plaintiff):  Yes.  I would have known at that moment ; cause I'm
> look—it looks like I'm looking forward.
> Q (counsel):  Well, here at 11:02:53 it looks like you're looking
> directly at the gun; correct?
> A (Plaintiff):  Yes.  Like straight at him with the gun. . . .
> Q (counsel):  Watching that surveillance video, do you think you
> should have foreseen this incident when you first saw that gun?
> A (Plaintiff):  Yes.  I would have immediately thought I was – I'm in
> danger.

([73.2] ¶¶ 28, 32).  Plaintiff could not recall whether he knew, prior to this

incident, that Victor was carrying a gun.  ([73.2] ¶ 31).

In the moments after Ever drew the gun, Plaintiff was outside the QuikTrip

in the vicinity of Ever.  Surveillance footage shows that he attempted to leave the

area, but was unable to retreat toward the store because Ever stepped into his path.

([81] ¶¶ 33-34, 38, 40).

Ever then pointed his gun at Cesar, and pulled him from the vehicle. Victor and Cesar tried to calm the situation, but Ever continued to threaten to shoot someone in the group. ([73.2] ¶¶ 35-37). The surveillance footage shows that Plaintiff and Cesar again tried to retreat to the store. ([81] ¶ 40). Ever again prohibited Plaintiff, but not Cesar, from entering the store with his gun still drawn. ([81] ¶ 42). Ever then turned and approached Plaintiff, pointed his gun at Plaintiff's side, and walked him towards the truck. ([73.2] ¶¶ 45, 46). Victor, Gustavo, and Ever engaged in more pushing and shoving. ([73.2] ¶ 47). Plaintiff did not get involved in the altercation. ([82] ¶ 98). Plaintiff testified that his failure to engage may have been due to "shock" or he may have "froze or freaked out." ([82] ¶¶ 100-101).

Ever then shot Plaintiff in the neck. ([73.2] ¶ 52). Hearing the gunfire, Cesar emerged from the QuikTrip store to see what happened. He returned and went back in, telling the QuikTrip employees to call the police. ([73.2] ¶¶ 54-56). The bullet hit Plaintiff's neck, shoulder, and spinal cord, leaving him partially paralyzed on his left side. ([82] ¶ 97).

## 2. Prior Incidents at the QuikTrip Location

The following violent incidents were reported to have occurred at the QuikTrip between late 2012 and mid-2015:

| | | |
|---|---|---|
| 5/16/15 | Person Armed | Subjects were overheard in QuikTrip parking lot talking about shooting someone. ([82] ¶ 23). |
| 11/3/14 | Public Drunkenness, Loitering, Obstruction of Officer. | Subjects in QuikTrip parking lot were reported as fighting, had physical signs of fighting with one another, were intoxicated, and were aggressive to officers. ([82] ¶ 23). |
| 8/5/14 | Criminal Attempted Armed Robbery | This incident involved an employee of QuikTrip walking to his vehicle when two suspects attempted to rob him at knifepoint. ([73.2] ¶ 78). |
| 7/21/14 | Robbery by Force | Juvenile victim was assaulted and robbed by two subjects as he was leaving the QuikTrip. Victim had bruising & swelling where the assailants punched him in the face. The subjects searched the victim's pockets before leaving the scene. ([82] ¶ 23). |
| 7/14/14 | Armed Robbery & Aggravated Assault | The QuikTrip store was robbed at gunpoint. ([73.2] ¶ 80). Store manager, Reubin Harrison had knowledge of this incident. ([82] 41). |
| 3/19/14 | Firearms Discharged. | Gunshots in the parking lot were reported. ([81] at ¶ 76). |
| 5/8/13 | Fight | There was no incident report generated, it is unknown whether this was a physical or verbal |

| | | altercation, and no weapons were reported. ([73.2] ¶ 82). |
|---|---|---|
| 4/10/13 | Firearms Discharge | Firearms discharged on QuikTrip premises. ([82] ¶ 23). |
| 4/1/13 | Armed Robbery | Subject armed with a gun stole the money from the QuikTrip registers. ([82] ¶ 23). |
| 1/12/13 | Robbery by Sudden Snatching | Subject entered store and stole an employee's purse from behind the counter. Another subject stole cola cases while the victim confronted the subject with her purse in the parking lot. ([73.2] ¶ 84). |
| 11/6/12 | Loitering, Robbery by Intimidation, Violation of GA Gang Act | Suspicious males were loitering on a sidewalk. Investigation revealed that earlier that day, they had followed a juvenile into the store and robbed him of his cell phone as he entered the parking lot. ([82] ¶ 23). |

B.    Procedural History

On May 18, 2016, Plaintiff filed his Verified Complaint for Damages in the State Court of Fulton County [1.1]. In it, Plaintiff alleges three claims of negligence based on premises liability, failure to make safe, "misleading the

Plaintiff," a claim for negligence per se, and one for punitive damages.[1]  On

June 17, 2016, Defendant removed the action to this Court, ([1]).

On June 19, 2017, Defendant moved for summary judgment [73], arguing

that (i) Plaintiff assumed the risk of his injuries by remaining in the vicinity after

Ever brandished the gun; (ii) Plaintiff and his group, after completing their

purchases and remaining on the premises, lost their status as invitees and were only

owed a duty to refrain from willful or wanton conduct; (iii) the shooting by a third

party was not reasonably foreseeable because prior incidents at the QuikTrip were

not substantially similar; (iv) Plaintiff's claims are barred by Plaintiff's

contributory negligence; and (v) Plaintiff had superior knowledge of the risk of the

shooting.

## II.    LEGAL STANDARD FOR SUMMARY JUDGMENT

"Summary judgment is appropriate where the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue

as to any material fact and that the moving party is entitled to judgment as a matter

of law."  Ahmed v. Air France-KLM, 165 F. Supp. 3d 1302, 1309 (N.D. Ga.

2016); see Fed. R. Civ. P. 56.  "An issue of fact is material if it 'might affect the

outcome of the suit under the governing law.'"  W. Grp. Nurseries, Inc. v. Ergas,

---

[1]    Plaintiff has abandoned his claim for negligence per se, negligent misleading of Plaintiff, and for punitive damages.  ([80] at 25).

167 F.3d 1354, 1360 (11th Cir. 1999) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)).  "An issue of fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  <u>Id.</u> at 1361 (quoting <u>Anderson</u>, 477 U.S. at 248).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying [materials] which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  "The movant[] can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof." <u>Graham v. State Farm Mut. Ins. Co.</u>, 193 F.3d 1274, 1281-82 (11th Cir. 1999). The moving party need not "support its motion with affidavits or other similar materials *negating* the opponent's claim."  <u>Celotex</u>, 477 U.S. at 323.  Once the moving party has met its initial burden, the nonmoving party must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial.  <u>Graham</u>, 193 F.3d at 1282.  The nonmoving party "need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings."  <u>Id.</u>  "[T]he mere existence of *some* alleged

factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247-48.

"If the evidence presented by the non-moving party is merely colorable, or is not significantly probative, summary judgment may be granted." Apcoa, Inc. v. Fid. Nat. Bank, 906 F.2d 610, 611 (11th Cir. 1990) (internal quotation marks omitted) (quoting Anderson, 477 U.S. at 250). The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott v. Harris, 550 U.S. 372, 380 (2007) (internal quotation marks omitted) (quoting Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)); cf. Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002) (a party is entitled to summary judgment if "the facts and inferences point overwhelmingly in favor of the moving party, such that reasonable people could not arrive at a contrary verdict") (quoting Combs v. Plantation Patterns, 106 F.3d 1519, 1526 (11th Cir. 1997) (internal quotation marks omitted)).

"At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those

facts." <u>Scott</u>, 550 U.S. at 380. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." <u>Id.</u> "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury." <u>Graham</u>, 193 F.3d at 1282. "The nonmovant need not be given the benefit of every inference but only of every reasonable inference." <u>Id.</u>

> Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

<u>Celotex</u>, 477 U.S. at 322-23; <u>see</u> <u>Freeman v. JPMorgan Chase Bank N.A.</u>, 675 F. App'x. 926, 931 (11th Cir. 2017) (same); <u>Herzog v. Castle Rock Entm't</u>, 193 F.3d 1241, 1247 (11th Cir. 1999) ("If the non-movant in a summary judgment action fails to adduce evidence which would be sufficient, when viewed in a light most favorable to the non-movant, to support a jury finding for the non-movant, summary judgment may be granted.").

## III. DISCUSSION

### A. Assumption of the Risk and Contributory Negligence

"[C]ontributory negligence and assumption of the risk are affirmative defenses for which the defendants have the burden of proof" and "are ordinarily not susceptible to summary adjudication but must be resolved by a trial in the ordinary manner, except where the facts are so plain and palpable that they demand a finding by the court as a matter of law." Miller v. Turner Broad. Sys., Inc., 794 S.E.2d 208, 213 (Ga. App. 2016), cert. denied (May 30, 2017) (quotations omitted). "A defendant moving for summary judgment based on an affirmative defense may not rely upon an absence of evidence in the record disproving the affirmative defense." Id. Defendant asserts assumption of the risk and contributory negligence as affirmative defenses. Both are based on Plaintiff's failure to leave the QuikTrip when he first saw Ever draw his gun. They are each addressed in turn.

#### 1. Assumption of the Risk

"Assumption of the risk is a complete defense and arises when, even if defendant is negligent, plaintiff himself is negligent in such a way that his own negligence is the sole proximate cause." Sayed v. Azizullah, 519 S.E.2d 732, 734 (Ga. App. 1999)

The Georgia Supreme Court has stated:

The affirmative defense of assumption of the risk bars a plaintiff from recovering on a negligence claim if it is established that he 'without coercion of circumstances, chooses a course of action with full knowledge of its danger and while exercising a free choice as to whether to engage in the act or not.' In Georgia, a defendant asserting an assumption of the risk defense must establish that the plaintiff (1) had actual knowledge of the danger; (2) understood and appreciated the risks associated with such danger; and (3) voluntarily exposed himself to those risks.

Vaughn v. Pleasent, 471 S.E.2d 866, 868 (Ga. 1996) (quoting Beringause v. Fogleman Truck Lines, Inc., 409 S.E.2d 524 (Ga. App. 1991)). "In assessing whether defendants have met this burden, we apply a subjective standard 'geared to the particular plaintiff and his situation, rather than that of a reasonable person of ordinary prudence.'" Fuller v. McCormick, 798 S.E.2d 280, 282 (Ga. App. 2017), cert. denied (Aug. 14, 2017) (quoting Muldovan v. McEachern, 523 S.E.2d 566 (Ga. 1999)).

Defendant admits that "assumption of the risk [is] ordinarily not susceptible to summary adjudication," and may be resolved on summary judgment only "where the evidence shows clearly and palpably that the jury could reasonably draw but one conclusion the issue." ([73.1] at 5) (citing Sayed, 519 S.E.2d at 734).

Defendant argues that Plaintiff's deposition testimony shows that he "knew a shooting was going to take place" when Ever first presented the gun. This

testimony is based on a series of questions regarding what Plaintiff "would have" observed or thought as Plaintiff watched the surveillance footage of the events on September 6, 2015. Plaintiff, however, first testified that he did not recall precisely the events prior to being shot and he did not testify that he knew Victor's cousin was carrying a gun until he observed it that evening. ([81] at 31). Thus, the facts fail to show that Plaintiff knew Ever was armed while in the car or as the argument escalated, and knew about it only when he saw it in Ever's hand. Plaintiff's testimony shows, at most, that he saw the gun when Ever pointed it at Cesar and when Plaintiff tried to leave the parking lot area where the argument was occurring. Plaintiff's testimony also shows that he was stopped by Ever twice, at least the second time when Ever had the gun in his hand. Plaintiff did not remember the immediate moments before and after the shooting. ([81] ¶¶ 19, 29-32).

Assuming Plaintiff fully appreciated the risk presented by the firearm Ever held, Defendant argues that Plaintiff "had multiple opportunities after first seeing that gun, the same time he had an appreciation of the hazardous nature of the gun, to leave the area, go into the store or call for help or assistance." ([73.1] at 6-7). Plaintiff argues his act of remaining outside near the shooter was not the result of a voluntary choice, but "the result of coercion of circumstances." ([80] at 8).

"[T]he defense of assumption of risk assumes that the actor, without coercion of circumstances, chooses a course of action with full knowledge of its danger and while exercising a free choice whether to engage in the act or not." Travis v. Quiktrip Corp., 794 S.E.2d 195, 199-200 (Ga. App. 2016) (citations omitted). Defendant's reliance on Taylor v. McGraw, 760 S.E.2d 657 (Ga. App. 2014) is misplaced. That case did not involve a question of whether the plaintiff voluntarily chose to engage in the risky behavior. The risk of throwing sawdust onto an open fire was not unappreciated.

Plaintiff points to facts that raise a genuine issue about his ability to flee the scene of the shooter in the moments between when the gun was first seen and when Plaintiff was shot. The surveillance footage shows that Plaintiff twice tried to go inside the QuikTrip to remove himself from the activity, but was prevented from doing so. Victor testified that Ever "had the gun pointed at [Plaintiff] like stand there don't move." ([82] at 91). The video shows that a reasonable jury could conclude that Ever twice prevented Plaintiff from retreating into the QuikTrip store by putting his body in between Plaintiff and the store entrance one of the times when Ever had the gun in his hand. ([82] ¶¶ 90, 95). The Court finds that Plaintiff has submitted facts that could allow a jury to reasonably conclude that Plaintiff did not possess actual knowledge of the danger presented and did not voluntarily

subject himself to the danger presented by Ever's possession of the firearm.   See Bass Custom Landscapes, Inc. v. Cunard, 575 S.E.2d 17, 20 (Ga. App. 2002).

Summary judgment on the basis of assumption of the risk is denied.

        2.      Contributory Negligence

Defendant also argues that it is "plain, palpable, and undisputed" that Plaintiff's choice to remain with the group of men after Ever brandished the gun was a contributory cause of his injuries.  ([73.1] at 20-21).  Defendant acknowledges that whether a plaintiff exercised "due diligence for his own safety is [an issue] ordinarily reserved for the jury."  Weston v. Dun Transp., 695 S.E.2d 279 (Ga. App. 2010) (quoting Lowery's Tavern v. Dudukovich, 507 S.E.2d 851 (Ga. App. 1998)).

The facts support that a reasonable jury could determine that Plaintiff was not in a position to act voluntarily when Plaintiff saw Ever brandishing the gun, and thus Defendant has failed to establish Plaintiff's negligence as a matter of law. It is an issue for the jury whether Plaintiff was in a position to act voluntarily once Ever brandished the gun.  Summary judgment based on contributory negligence is denied.

B.    Plaintiff's Status and the Duty Owed

O.C.G.A. § 51-3-1, provides that an "owner or occupier of land" owes an invitee a duty "to exercise ordinary care in keeping the premises and approaches safe."  O.C.G.A. § 51-3-1.  Trespassers and licensees, on the other hand, are only owed a duty against willful or wanton injury.  O.C.G.A. § 51-3-2-3.  "The 'accepted test' for invitee status in Georgia is whether the purported invitee's presence is of 'mutual benefit' to the purported invitee and the landowner."  Tobar v. United States, 696 F. Supp.2d 1373, 1378 (S.D. Ga. 2009) (quoting Moore-Sapp Inv'rs v. Richards, 522 S.E.2d 739 (1999)).  A person's status on property can change.  See Card v. Dublin Constr. Co., 788 S.E.2d 845 (Ga. App. 2016).

Defendant argues that at the time of the shooting, Plaintiff did not have status as an invitee because the group of men had concluded their business at the store and were loitering in the parking area.  Defendant argues that, as a result, it did not owe Plaintiff the duty of care owed to an invitee.

Plaintiff's claim is in part based on the argument that once he and his group concluded their business at the QuikTrip—getting gas and purchasing beer—they became loiterers.  Their status as loiterers should, Plaintiff claims, have alerted a reasonably prudent QuikTrip employee to take some step to investigate or report Plaintiff and his companions.  Defendant counters that since Plaintiff and his

group, as loiterers, were no longer providing Defendant a benefit, their status as invitees lapsed prior to the shooting.

Plaintiff maintains his argument that even though Plaintiff and his group were "loiterers" they retained their invitee status for the purpose of the duty owed to them by Defendant.[2]

Defendant has not established as a matter of law that Plaintiff was merely a trespasser on the premises at the time of the shooting. A reasonable jury could conclude that Plaintiff and the others he was with were invitees for some period of time after Cesar was finished pumping gas because some of them made purchases in the store. Whether Plaintiff's remaining on the property after his group had concluded its business on the premises caused him to lose invitee status is a question for the jury. See Card, 788 S.E.2d at 851 ("Whether Card's entering the building was unreasonable so as to change his status to that of licensee or trespasser is a question for jury resolution."). Summary judgment based on Plaintiff's failure to have status as an invitee is denied.

---

[2]    Plaintiff argues that the fact that he did not purchase anything at the QuikTrip and merely came with other patrons should not disqualify him from also being considered an invitee. The Court does not address this argument because Defendant does not argue that Plaintiff was not an invitee, but only that his status as an invitee changed after everyone's business had concluded.

C.    The Duty to Protect Against Third Party Criminal Acts

"A proprietor's duty to invitees is to exercise ordinary care in keeping the premises and approaches safe." O.C.G.A. § 51-3-1.  "The proprietor is not the insurer of the invitee's safety, but is bound to exercise ordinary care to protect the invitee from unreasonable risks of which he or she has superior knowledge.  If the proprietor has reason to anticipate a criminal act, he or she then has a duty to exercise ordinary care to guard against injury from dangerous characters." Modesitt v. Waffle House, Inc., 444 S.E.2d 412, 413 (Ga. App. 1994).

Here, Plaintiff maintains that Defendant had reason to anticipate a criminal act and guard against his injury because: (1) Defendant had notice of previous criminal activity on its premises substantially similar to the shooting at issue; and (2) Defendant's employees observed the escalating altercation that lasted several minutes and ultimately resulted in Plaintiff's injury.

It is well-settled that an owner or occupier's awareness of previous criminal activity on the premises renders substantially similar crimes foreseeable and obligates the owner or occupier to take reasonable measures to protect against those crimes.   Sturbridge Partners, Ltd. v. Walker, 482 S.E.2d 339, 341 (Ga. 1997).  Whether previous crimes were substantially similar to the crime causing Plaintiff's injury is typically a critical, fact-intensive inquiry.

Defendant argues that the shooting was so dissimilar from prior incidents at the QuikTrip that Defendant could not, as a matter of law, have had a duty to protect against it. In determining whether an owner or occupier of property has a duty to protect customers against the risk posed by criminal activity, the Georgia Supreme Court has observed that "the incident causing the injury must be substantially similar in type to the previous criminal activities occurring on or near the premises so that a reasonable person would take ordinary precautions to protect his or her customers or tenants against the risk posed by that type of activity." Sturbridge, 482 S.E.2d at 341.

Plaintiff has identified eleven (11) Certified Clayton County Incident Reports identifying incidents during the period November 6, 2012, and May 16, 2015, involving various crimes committed at the QuikTrip. Five of the incidents involve weapons, and four of them involved a firearm or discharge of one. One involved intoxicated subjects fighting in the parking lot; another involved subjects overheard in the parking lot talking about shooting someone. ([82] ¶ 23). Plaintiff argues that these prior crimes create as issue of fact whether Defendant knew or should have known that a crime such as the shooting might be committed on its premises.

Defendant responds that these incidents are not "substantially similar"

because none of them involved a person being shot.  Defendant also claims that robberies inside the store cannot be similar to altercations outside the store.  ([80] at 9).  Georgia law does not require a showing that a plaintiff had knowledge of prior *identical* crimes in order allow a jury to decide whether the attack on Plaintiff was foreseeable.  <u>Compare</u> <u>Sturbridge</u>, 482 S.E.2d 339 (concluding that prior burglaries gave rise to triable issue on foreseeability of rape and aggravated sodomy), <u>with</u> <u>Prudential-Bache/A.G. Spanos Realty Partners, L.P.</u>, 492 S.E.2d at 867 (holding prior property crimes on the premises were insufficient for defendants to reasonably anticipate violent sexual assault on tenant).  The Court finds that Plaintiff has established a genuine issue as to whether the listed incidents were substantially similar to the shooting of Plaintiff such as to "attract the owner's attention to the dangerous condition which resulted in the litigated incident." <u>Grandma's Biscuits, Inc. v. Baisden</u>, 386 S.E.2d 415 (Ga. App. 1989).  There is sufficient evidence to present this factual issue to a jury absent evidence of personal malice as the cause of the injury.  <u>See</u> <u>Prudential-Bache/A.G. Spanos Realty Partners, L.P.</u>, 492 S.E.2d at 866-67 ("the question of reasonable foreseeability of a criminal attack is generally for a jury's determination rather than summary adjudication by the courts").

Georgia courts have, however, ruled as a matter of law that "personal malice" crimes are not foreseeable even when they involve the same bad acts as previous crimes on the premises. A prominent treatise on Georgia tort law provides:

> [i]n some cases foreseeability may be negated by the plaintiff's superior knowledge, as when an assault is a result of a pre-existing personal animosity between the plaintiff and the attacker, or arises out of a pre-existing private relationship between the plaintiff and the attacker which was wholly unconnected with the premises. Likewise, if a plaintiff is an active participant in the series of events which left him injured, such as a brawl or mutual combat, he cannot recover from the premises owner for his injuries sustained thereby.

4 Charles R. Adams III, Ga. Law of Torts § 4:7 (2017) (internal citations omitted).

Georgia courts have enforced the exception for "personal malice" crimes. See Shockley v. Zayre of Atlanta, Inc., 165 S.E.2d 179 (Ga. App. 1968); Adler's Package Shop, Inc. v. Parker, 378 S.E.2d 323 (Ga. App. 1989). In Shockley, the plaintiff was attacked inside a store by a woman who previously had threatened the plaintiff and against whom the plaintiff had taken out a peace warrant. The attacker confronted the plaintiff in the checkout line, the two women began struggling, and when an employee of the defendant store and a shopper separated them, the attacker cut the plaintiff with a razor. The Court of Appeals of Georgia reasoned that "[w]hile a business proprietor has a duty . . . to exercise ordinary care to protect persons on its premises as business invitees from foreseeable dangerous

conduct of others, we know of no authority holding that this duty of ordinary care requires the proprietor to intervene to save a business invitee from an assault arising from the assailant's personal malice toward the victim." Shockley, 165 S.E.2d at 182.

In Adlers's Package Shop the court held that the trial court erred in denying the defendant shop's motion for summary judgment where plaintiff sustained injuries during an altercation with a personal adversary on public sidewalk outside of the shop. The court rejected the plaintiff's argument that the criminal attack was foreseeable because the shop had been the scene of two armed robberies, a theft, and a burglary prior to the altercation:

> [T]hose crimes were directed against the business itself and were not similar to the incident at issue here. . . . We find that proof of prior dissimilar crimes occurring several years before the incident at issue did not meet the 'similarity' requirement so as to constitute a sufficient showing of [appellant's] knowledge of the litigated dangerous condition.

378 S.E.2d at 325 (internal citations omitted). See also Reid v. Augusta-Richmond Cty. Coliseum Auth., 416 S.E.2d 776, 780 (Ga. App. 1992) ("the intervening attack which arose out of personal malice against Reid was not foreseeable, thus the proprietor was not liable"). But see Lenny's No. Two, Inc. v. Echols, 384 S.E.2d 898, 901 (Ga. App. 1989) ("there is no evidence that the attack was the result of any personal malice which developed other than while [plaintiff] was a

business invitee of [defendant]'s. Further, extended beyond its facts, the statement from [Shockley] would relieve proprietors from any liability for attacks by patrons on others, no matter how reasonably the attack might have been anticipated. Consequently, the better rule appears to limit the principle established in [Shockley] to instances involving those unusual facts.").

The holdings in these cases are consistent with the line of cases involving assaults by assailants known to the victims, and about whom the victims had "superior knowledge." In Griffin v. AAA Auto Club S., Inc., 470 S.E.2d 474 (Ga. App. 1996), the plaintiff sued her employer and its third party security contractor for injuries sustained when she was shot by her ex-boyfriend leaving work one night. Two days prior to the shooting, the plaintiff warned a security guard that her ex-boyfriend had threatened to come onto the premises and shoot her. Still, the court reasoned that the plaintiff had superior knowledge of her assailant and therefore a greater degree of foreseeability:

> This case . . . differs significantly from those in which a jury could find a legal failure to keep the premises and approaches safe, so that its invitees in general are not subjected to the risk of foreseeable attacks by unknown assailants. This was not a random stranger attack but rather grew out of a specific private relationship which had no connection with employment whatsoever. The place chosen by the boyfriend for the attack just happened to be the employer's parking lot. The employer did not create or allow to exist an environment which placed [the plaintiff] at risk any more than if she had been at home or on the street.

Griffin, 470 S.E.2d at 476–77; see also Johnson v. Holiday Food Stores, Inc., 520 S.E.2d 502, 505 (Ga. App. 1999) (affirming grant of summary judgment to store where plaintiff had superior knowledge that boyfriend-assailant hit her prior to her coming to the store and where she had superior knowledge of his temperament).

Here, whether Ever carried personal malice toward Plaintiff before the men arrived at the store remains a genuine issue of material fact precluding summary judgment. Although the shooter, Ever, was related to Plaintiff's brother-in-law Victor, the shooter was a stranger to Plaintiff, and Plaintiff had never met or spoken to the shooter or the shooter's brother, Gustavo, prior to this incident. ([81] ¶ 1). Plaintiff also testified that he did not know Ever possessed a gun. ([73.2] ¶ 31). The record does not contain undisputed evidence that the shooting resulted from something other than a fight on the premises: Plaintiff's brother Cesar described this incident as "something silly that happened" arising out of an argument over "nothing." ([73.2] ¶ 2). See Lenny's, 384 S.E.2d at 901. This personal malice exception may well apply in this case. Whether Ever harbored personal malice for Plaintiff remains an issue for the jury to decide.

A genuine issue of material fact also exists in determining whether Defendant exercised reasonable care in response to the escalating incident that resulted in Plaintiff's injury. Unlike Shockley, where the assailant attacked the

plaintiff suddenly out of personal malice, here, a jury could reasonably conclude that the exercise of ordinary care required Defendant to take measures to protect invitees from the danger presented by the extended altercation that ultimately led to Plaintiff's injury. ([1.1] ¶¶ 21-36). Making all reasonable inferences in favor of Plaintiff, the facts show that the group lingered outside for a period of time as the argument escalated. According to Defendant, the men argued with raised voices for approximately fifteen minutes. ([73.2] ¶¶ 17-18). An employee is seen on the surveillance video sweeping the area near where the men are arguing. ([73.2] ¶ 47). Three of the men entered the store, and an employee noticed the smell of alcohol and acknowledged that he was "rude." ([82] ¶ 76). The men moved about in the front of the store, at times pushing, shoving, and restraining one another. This lasted for several minutes and spanned a large area around the truck. Ever then drew his gun, restrained Plaintiff's movement for a few moments, and shot Plaintiff in the neck.

Construing the facts in the light most favorable to the Plaintiff, Defendant may be found to have had knowledge of an escalating danger on its premises. A jury could conclude that Defendant failed to exercise ordinary care (e.g. calling the police) in response to the escalating argument. See Modesitt, 444 S.E.2d at 414 ("Waffle House acted reasonably in fulfilling its duty toward [plaintiff] by calling

the police after [plaintiff] and DeDecker followed [the assailant] outside and [the assailant] produced the gun.").[3]  Summary judgment based on the personal malice exception is denied.

## IV.  CONCLUSION

For the foregoing reasons, and finding existing disputes of material facts,

**IT IS HEREBY ORDERED** that QuikTrip Corporation's Motion for Summary Judgment [73] is **DENIED**.


**SO ORDERED** this 19th day of December, 2017.


WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

---

[3]     Defendant briefly raises the issue of proximate cause.  Under Georgia law, an intervening criminal act of a third party will supersede the defendant's negligent act "unless the intervening criminal act is a reasonably foreseeable consequence of the defendant's negligent act."  Baker v. Simon Prop. Grp., 614 S.E.2d 793, 795 (Ga. App. 2005) (quoting Brown v. All-Tech Inv. Grp., 595 S.E.2d 517 (Ga. App. 2004)).  Having found these is an disputed issue of material fact whether the shooting was foreseeable based on Defendant's knowledge of previous incidents at this location, the Court does not separately analyze foreseeability in the context of proximate cause.