IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ALAN E. ROBLES             )
                            )
     Plaintiff,           )
                            )
v.                       )     Case No. 1:16-CV-02050-MLB
                            )
QUIKTRIP CORPORATION    )
                            )
                            )
                            )
     Defendant.       )
_____ )

## RESPONSE TO PLAINTIFF'S UNTIMELY DAUBERT MOTION/MOTION IN LIMINE TO EXCLUDE DEFENDANT'S EXPERT

COMES NOW Defendant QuikTrip Corporation, by and through counsel, and files this response to Plaintiff's untimely <u>Daubert</u> Motion/Motion in Limine to Exclude Defendant's Expert.

**I.    Plaintiff's Motion in Limine to Exclude Plaintiff's Expert is an Untimely <u>Daubert</u> Motion and Should be Stricken.**

Defendant adopts and incorporates its Motion to Strike herein, as Plaintiff's <u>Daubert</u> Motion/Motion in Limine is untimely and in violation of a Court Order with no good cause shown. Judge Duffey set a scheduling order that modified the local rules, and explicitly set the <u>Daubert</u> Motion deadline for June 19, 2017. [Doc. 70]. That deadline passed almost ten months ago. Therefore, Defendant maintains

the Motion should be stricken.[1] Without waiving such arguments Defendant does respond to the Motion herein, with vigorous objection not only to the untimeliness and violation of the Court Order, but Plaintiff's use of a "Motion in Limine" to bring his untimely <u>Daubert</u> Motion, which left Defendant only one week to respond per the Court's Order Setting Trial regarding the briefing schedule for Motions in Limine.

## II.     Defendant's Expert Karim Vellani is a Qualified Expert.

Although Plaintiff does not appear to challenge Defendant's expert Karim Vellani's qualification as an expert by virtue of his "knowledge, skill, experience, training, or education," Defendant specifically notes that Mr. Vellani is well qualified as a security expert. Mr. Vellani has over twenty-two years of security management and forensic security consulting experience. [Vellani Report, Doc. 28, p.3]. He has a master's degree in Criminal Justice Management and is board certified in Security Management and a board certified Security Consultant. [Doc. 28]. He has published two books, <u>Applied Crime Analysis</u>, which contains the crime analysis methodology Mr. Vellani developed using the Federal Bureau of

---

[1] Not filing a <u>Daubert</u> motion within the court-ordered deadline does mean that Plaintiff waives any objections to Defendant's expert. <u>See</u> <u>Webster v. Fulton County, Ga.</u>, 85 F.Supp. 2d 1375 (N.D. Ga. 2000); <u>Donihe v. Young</u>, 2006 WL 5249717 (N.D. Ga. Dec. 6, 2006).

Investigation's (FBI) Uniform Crime Report coding system, and <u>Strategic Security Management</u>. [Doc. 28]. Additional experience and qualifications can be found in Mr. Vellani's CV and Expert Report, and need not be exhaustively listed herein. [Doc. 28]. Mr. Vellani is well qualified as an expert in crime analysis, risk assessment and security management.

### III.    Defendant's Expert Karim Vellani has set Forth Reliable Opinions that are Relevant to Issues in the Case.

A.    <u>Mr. Vellani's Opinions are Not the Same as Plaintiff's Excluded Expert's.</u>

Plaintiff's primary argument focuses on an attempt to paint Defense expert Mr. Vellani's opinions as the same as Plaintiff's excluded expert's opinions and thus, *quid pro quo*, Mr. Vellani should be excluded. This fails on multiple levels, and is not a basis for excluding Mr. Vellani's opinions.

1.    <u>*Mr. Vellani Offers No Foreseeability Opinion.*</u>

Plaintiff vaguely argues that Defendant's expert should be excluded because his own expert was excluded from giving a foreseeability opinion. Plaintiff appears to be arguing that Mr. Vellani is giving a foreseeability opinion. He is not. It is unclear which specific opinion of Mr. Vellani Plaintiff is claiming is a foreseeability opinion, because one is not enumerated. Therefore they are addressed as a whole.

Mr. Vellani does not provide any opinion that this incident was foreseeable or not foreseeable. Based on his experience and analysis of the crime risk of the premises, Mr. Vellani offers the opinion first that "[a] pattern of crimes, similar to the subject incident, did not exist at the QuikTrip." That opinion goes to the analysis of the crime on the premises, and opines on criminal patterns, well within the purview of a security expert. This is not a foreseeability opinion. Rather it looks towards the analysis of crime on the premises. It is relevant to foreseeability, and whether QuikTrip had knowledge of a "dangerous condition" which resulted in the subject incident. But only from an analysis of the crime risk of the property. Mr. Vellani does not take the opinion outside his area of expertise, and does not provide a specific opinion on whether this incident was or was not foreseeable.

Mr. Vellani offers a second opinion that "[t]he subject property had a low risk of violent crime." Again, this opinion goes to the analysis of the crime on the premises, and opines on the crime risk analysis Mr. Vellani is an expert in, and the analysis he performed. While it also is relevant to whether QuikTrip had knowledge of a "dangerous condition" which resulted in the subject incident, and perhaps foreseeability as well, it does not give an opinion outside the area of Mr. Vellani's expertise and is not a foreseeability opinion.

Mr. Vellani offers a third opinion that "[t]he subject incident was an interpersonal, non-stranger dispute that resulted in the shooting of Alan E. Robles by an individual known to him or known to his family." This opinion is not a foreseeability opinion. It is Mr. Vellani's expert analysis of this incident and categorizing this incident based on the Bureau of Justice Statistics crime categories.

Mr. Vellani offers a fourth opinion that "Mr. Robles chose to remain at the scene despite his knowledge that a gun was present, despite having had the gun pointed at his back, and despite having ample opportunities to remove himself from the area." Again, this is not a foreseeability opinion. It is an opinion based on Mr. Vellani's experience as a security expert in analyzing crime risk and training on security.

The fifth opinion Mr. Vellani provides is that "Had QuikTrip become aware of "loitering" prior to the gunshots, it is unlikely that police would respond prior to the shooting. Response times to loitering calls are not the same as response times to shooting calls." This is not a foreseeability opinion. This is Mr. Vellani's security expert opinion based on information obtained from the Clayton County Police Department.

Mr. Vellani offers a sixth opinion that "QuikTrip employees responded in a timely manner after the gunshots by calling the police." Again, this is not a foreseeability opinion, but a security expert opinion based on Mr. Vellani's training and experience.

Seventh, Mr. Vellani offers an opinion that "[t]he security posture of the QuikTrip was appropriate in light of the low crime risk." This is not a foreseeability opinion. Mr. Vellani is an expert in security management and crime risk assessment, and gives this opinion based on that experience and his analysis.

And finally, Mr. Vellani offers an eighth opinion that "security at the QuikTrip, or lack thereof, did not cause the subject incident." Once again, this is not a foreseeability opinion. This is Mr. Vellani's expert opinion based on his analysis of the incident, the crime risk analysis, criminological studies, and experience regarding security management and consulting.

There is no foreseeability opinion offered by Mr. Vellani. Therefore Plaintiff's argument that Mr. Vellani should be excluded, like Plaintiff's expert was excluded, from giving a foreseeability opinion is moot. Further, the Court excluded Plaintiff's expert's opinions for specific reasons which were not just that he gave "foreseeability" opinions. The Court found that Plaintiff's expert's opinions were not reliable, because he could not identify what actual incidents or

events he relied upon for his opinion; his opinions were not reliable because he could not delineate or identify which incidents he claimed QuikTrip knew about; and his opinions were not helpful to the trier of fact. [Doc. 93 p. 10-13].

2.    <u>*Mr. Vellani's Opinions Regarding Security are Not the Same as Plaintiff's Excluded Expert.*</u>

Plaintiff also appears to vaguely argue that because his expert was excluded from testifying on "security," Defendant's expert Mr. Vellani should also be excluded. Again, this vague and unsupported claim has no merit. Unlike Plaintiff's excluded expert, Mr. Vellani does not give speculative opinions on what actions would have prevented the shooting, or conjecture on what would have deterred the crime. Plaintiff's expert's opinions on those matters were excluded because there was no reliable methodology supporting those opinions, and they were completely speculative and conjectural, having significant potential to mislead the jury. [Doc. 93 p. 14-17]. Mr. Vellani does not offer such vague, speculative or conjectural opinions.

<u>US v. Frazier</u>, cited by Plaintiff, is directly on point to this case. 387 F.3d 1244 (2004). In <u>Frazier</u>, the Eleventh Circuit, *en banc*, determined that the district court did not abuse its discretion by denying the defendant an opportunity to present its expert's testimony because it was excluded as unreliable under Rule 702, when the opposing party's expert was allowed to testify. <u>Id.</u> Just like the

rejected (opposite) argument in <u>Frazier</u>, Plaintiff attempts to argue that Defendant's expert should be excluded simply because his own expert was excluded, or in the alternative that Plaintiff's expert should be allowed to testify simply because Defendant's expert is testifying. That is not a sound legal argument.

Plaintiff's attempt to distinguish his claim from that in <u>Frazier</u> is without foundation. Plaintiff's claim that because the parties' experts both relied on "essentially the same information" to make their opinions, their opinions are the same and thus equitable rules should allow both to testify or both be stricken. That conclusion lacks foundation. While both experts generally worked with the same set of materials and facts, that is true, what they relied upon for their opinions, their analysis, and their conclusions are markedly different. Significantly, Plaintiff's expert could not even articulate what specific incidents he relied upon for his opinions, nor whether those incidents were known to QuikTrip. [See Doc. 93 p. 10-13]. Thus his testimony was excluded as unreliable. [Doc. 93].

Plaintiff makes a Rule 403 argument that Mr. Vellani's testimony should be excluded because it would "have the significant potential to mislead the jury and prejudice" each party. But this argument ignores the fact that Plaintiff's expert was excluded under Rule 702, for unreliable, speculative and conjectural opinions, as well as those opinions not being helpful to the trier of fact. There is no basis for a

Rule 403 exclusion in this case, simply because one expert put forth admissible opinions and one did not. Frazier, 387 F.3d at 1268.

       B.     Mr. Vellani's Opinions are Reliable.

Plaintiff challenges Mr. Vellani's opinions as unreliable because they are based on the same facts/information his excluded expert used. This is the same *quid pro quo* argument that is not entirely correct. While Mr. Vellani and Plaintiff's excluded expert were operating with similar sets of information, Mr. Vellani clearly articulated which specific prior incidents and information he used in his opinions. [Doc. 28, p. 4, 8]. Plaintiff's excluded expert could not do so. [Doc. 93 p. 10-12]. Experts within the same case will likely use the same set of underlying facts/information. That is not a basis to exclude an expert - especially here where one expert's opinions were found to be unreliable because he could not articulate what specific information he used/relied on to come to his opinion. See Gen. Elec. Co. v. Joiner, 522 U.S. 136, 118 S.Ct. 512 (1997) (district court erred in excluding expert's testimony just "because it drew different conclusions from the research than did each of the experts.")

Plaintiff vaguely further challenges Mr. Vellani's opinions as unreliable but does not articulate any other reason for such challenge, or any specific opinion or methodology that he claims supports his challenge. Rather, Plaintiff relies again on

Judge Duffey finding Plaintiff's expert's methodology unreliable and appears to claim that because of that, Mr. Vellani's methodology should also be deemed unreliable. As discussed throughout this brief, that is not a valid legal argument in this case. Judge Duffey excluded Plaintiff's expert, finding his methodology unreliable for one because Plaintiff's expert could not articulate what information or facts he relied upon in coming to his conclusion, and two he could not identify what incidents were or were not known to the Defendant. Plaintiff's expert's opinion was "not capable of being tested" and was therefore not reliable. [Doc. 93 p. 11, quoting Seamon v. Remington Arms Co., LLC, 813 F.3d 983, 988 (11th Cir. 2016)] That is not the case with Mr. Vellani's opinion, and Plaintiff has not and cannot point to any similar issue.

Mr. Vellani performed a crime risk analysis of the subject QuikTrip as outlined in his report, pursuant to an accepted, reliable forensic methodology. He combined that with reliable tools and applied an established body of security assessment and management techniques and his extensive twenty-two years' experience in the field to form his opinions. The facts and information he relied on in forming his opinions has been provided and could be tested by others, because it is a known set of facts. All are indicators of reliability. See e.g. Padgett v. Kmart Corp., 2016 WL 3746671 at *5 (S.D. Ga. July 8, 2016). In evaluating an expert's

testimony, "Daubert does not require certainty; it requires only reliability." Padgett v. Kmart Corp., 2016 WL 3746671 (S.D. Ga. July 8, 2016)(quoting Hendrix ex rel. G. P. v. Evenflo Co., 609 F.3d 1183, 1198 n.10 (11th Cir. 2010)).

Plaintiff did not choose to take Mr. Vellani's deposition, but can of course delve into any alleged issues that go to his credibility on cross-examination.[2] See Long v. Murray County School District, 2012 WL 13071603 (N.D. Ga. April 18, 2012). Courts have repeatedly stressed "Daubert's teaching that the gatekeeping function under Rule 702 'is not intended to supplant the adversary system or the role of the jury." Adams v. Lab. Corp. of Am., 760 F.3d 1322 (11th Cir. 2014). It is the role of the jury to weigh the strength of an expert's conclusions. Stollings v. Ryobi Tech., Inc., 725 F.3d 753 (7th Cir. 2013). Just because Mr. Vellani's opinions may be contrary to Plaintiff's views does not make them inadmissible.

C.    Mr. Vellani's Opinions are Relevant and Helpful to Issues in the Case.

Rule 702 requires that the evidence or testimony "assist the trier of fact to understand the evidence or to determine a fact in issue." This consideration "goes primarily to relevance." Daubert v. Merrill Dow Pharm. Inc., 509 U.S. 579, 113 S.Ct. 2786 (1993). "Expert testimony which does not relate to any issue in the case

---

[2] Plaintiff's issue with calls for service is such an issue that can be examined on cross-examination. Mr. Vellani's exclusion of such calls is not per se "contrary to Georgia law" as alleged by Plaintiff.

is not relevant, and, ergo, non-helpful." US v. Frazier, 387 F.3d 1244, 1262 (11th Cir. 2004). Expert testimony is "additionally helpful 'if it concerns matters that are beyond the understanding of the average lay person.'" Padgett, 2016 WL 3746671 at *3 (citing Frazier, 387 F.3d at 1262).

Mr. Vellani's opinions will help the jury in analyzing issues in this case. Initially it should be noted that crime prevention as a field is highly dependent on measures tailored in order to be effective on certain crimes. Mr. Vellani as a security expert can offer specialized knowledge on these issues that laypersons do not have, and may in fact have misconceptions of. A central issue in this case is whether Defendant had knowledge of a "dangerous condition" which resulted in the subject incident, or whether this incident was foreseeable. (See Order [Doc. 90] p. 20; Pl. Stmt of the Case Ex. "C" to Proposed Pretrial Order). Mr. Vellani's opinions one, two, three, seven and eight all are relevant because they are related to this central issue in this case.

Opinion one is Mr. Vellani's expert opinion that "[a] pattern of crimes, similar to the subject incident, did not exist at the QuikTrip." This is a crime risk analysis performed by an expert as to whether there was a "pattern" of crimes similar to the subject incident. This crime risk analysis, based on forensic methodology, is outside the knowledge of the average juror. It is relevant to help

the trier of fact determine whether there was a "dangerous condition" which resulted in the subject incident that QuikTrip should have known about. One of the ways Plaintiff can, and is expected to, argue there was such knowledge is by presenting evidence on prior substantially similar crimes on the premises. Mr. Vellani is not making any opinion as to whether the crimes proffered by Plaintiff are "substantially similar" using the legal definition. Mr. Vellani's opinion is based on his crime risk analysis, outlined in his report, looking at the crimes he found relevant and giving his opinion, based on forensic methodology as well as the FBI uniform crime report methodology, that there was no pattern of crimes similar to the subject incident. That is directly relevant to a central issue and will help the jury in coming to a decision on foreseeability.

Opinion two is "[t]he subject property had a low risk of violent crime." Again, this is directly relevant to a central issue in the case, as it is expected that one of the ways Plaintiff will argue that this incident was foreseeable, or that there was a "dangerous condition" that QuikTrip should have known about, is pointing to prior crime on the premises. Mr. Vellani's opinion based on his crime risk analysis will assist the jury and does make a fact at issue more or less likely.[3] Further, the average juror is not likely to know about the tools to assess crime risk,

_____

[3] It should be noted that Mr. Vellani does not however, take his opinion two steps further to give an actual foreseeability opinion.

such as the International Association of Professional Security Consultants (IAPSC) Forensic Methodology used by Mr. Vellani. Such assessment is specialized knowledge that will assist the trier of fact. It is therefore relevant to this case.

Opinion three states "[t]he subject incident was an interpersonal, non-stranger dispute that resulted in the shooting of Alan E. Robles by an individual known to him or known to his family." Mr. Vellani explains in his report that "when assessing the crime risk of a place, it is important to distinguish crimes which pose a threat to the general users of the place versus those that pose a risk to specific individuals." This opinion comes from specialized experience and knowledge relating to a crime risk assessment for the premises and categorization of crimes that the ordinary juror is not likely to know. This is relevant to a central fact at issue relating to whether there was a "dangerous condition" that QuikTrip should have known about, as well as the foreseeability of this incident for the jury to determine.

Opinion seven states "[t]he security posture of the QuikTrip was appropriate in light of the low crime risk." This combines the crime risk analysis based on forensic methodology performed by Mr. Vellani with his specialized experience of over twenty-two years in the security management and forensic security consulting experience, including assessing and designing security programs for retailers,

shopping centers and malls, hotels and other commercial facilities. Mr. Vellani's experience in security management and opinion as to whether the security posture of the QuikTrip was appropriate, based on the crime risk assessment, is specialized knowledge outside the average juror's experience. It is relevant to a central issue in this case, regarding whether there was a "dangerous condition" and whether QuikTrip was negligent.

Opinion eight provides that "[s]ecurity at the QuikTrip, or lack thereof, did not cause the subject incident." Again, this opinion is from a security management expert's point of view, relating to the assessment of the crime risk analysis and security posture of the store, as well as the facts of the incident. This opinion, based on such analysis, is relevant to a central issue in this case, namely whether QuikTrip was negligent and breached some duty. This opinion assists the trier of fact in coming to its determination, with specialized information regarding security and the criminal risk assessment. It is therefore relevant and admissible.

Another central issue in this case is whether Defendant failed to exercise ordinary care. (See Order [90] p. 25). Plaintiff alleges Defendant failed to intervene prior to Plaintiff being shot. (Pl. Stmt of the Case Ex. "C" to Proposed Pretrial Order). In the same manner, Mr. Vellani's opinions four, five, and six are all relevant because they are related to this central issue in the case.

Opinion four states that "Mr. Robles chose to remain at the scene despite his knowledge that a gun was present, despite having had the gun pointed at his back, and despite having ample opportunities to remove himself from the area." This is directly relevant to Plaintiff's claim that QuikTrip failed to intervene, or was negligent. It provides an analysis from a security expert's perspective of options to respond to a security threat based on accepted training practices for responding to threats.

Opinion five provides that "[h]ad QuikTrip become aware of "loitering" prior to the gunshots, it is unlikely that police would respond prior to the shooting. Response times to loitering calls are not the same as response times to shooting calls." One of the allegations in the case by Plaintiff is that if QuikTrip had intervened, in calling the police, prior to the shooting, this shooting would not have occurred. This opinion is directly relevant, providing expert information based on information from the jurisdictional responding police department, Clayton County, about matters outside a layperson's knowledge – namely different response times for different types of calls. This opinion directly relates to a central issue in the case and will help the jury in their analysis of that issue.

Opinion six states "QuikTrip employees responded in a timely manner after the gunshots by calling the police." Plaintiff has claimed QuikTrip failed to

respond, or respond in a timely manner, to this incident. This opinion is directly relevant to that issue, and comes from a security expert with vast experience in security management training.

All of these opinions are relevant to issues in this case, and all would assist the trier of fact in their deliberations.

### IV.    Plaintiff's Citation to a Proverb, Not a Rule of Law, is Not Relevant to this Case.

Plaintiff quotes a proverb "[what's sauce for] the goose is [sauce for] the gander," elevating it to a "rule" of law that must be followed and claims that supports his argument to exclude Defendant's expert in this case. That argument is misplaced. While many courts have quoted the proverb, it is certainly not a "rule" of law. Nor is it applicable to this issue. As outlined above, Defendant's expert Mr. Vellani does not offer the same opinions as Plaintiff's excluded expert, and they are not speculative, conjectural, or unreliable and not helpful to the trier of fact.

Plaintiff cites Farley v. Zellmer for support of his argument. 2005 WL 6735537 (N.D. Ga. Sept. 21, 2005). Farley supports that the untimely Daubert challenge by Plaintiff should be stricken.[4] It does not support Plaintiff's argument

---

[4] In Farley, the party having its expert struck immediately moved for reconsideration and made a corresponding motion against the other party's expert. Here, Plaintiff did no such thing, instead choosing to wait until trial preparation had begun to raise the untimely issue.

that an expert should be struck "for the same reasons" another expert was struck. Defendant does not dispute that the same rules of law apply to both experts. But there is no support in law that just because one expert was stricken as unreliable and speculative, the other expert must be struck. In <u>Farley</u>, the reason the court reconsidered its order striking the expert, is because both parties failed to properly follow court deadlines – which had been the proper basis for striking one of the experts. <u>Id.</u> The expert had not been stricken for unreliable testimony, as here.

Plaintiff also cites to <u>US v. Gaskell</u> to support this argument. 985 F.2d 1056 (11th Cir. 1993). The expert improperly excluded in <u>Gaskill</u> was not excluded "on the ground that the conclusion was not supported by scientific data," but rather excluded because the trial court found the testimony cumulative, irrelevant and discussed instances of other events not before the court. <u>Id.</u> at 1062. That is a Rule 403 exclusion, which is not pertinent to this case.

Plaintiff's citations to <u>US v. Sellers</u>, 566 F.2d 884 (4th Cir. 1977), <u>US v. Parshall</u>, 757 F.2d 211 (8th Cir. 1985), and <u>Breidor v. Sears, Roebuck & Co.</u>, 722 F.2d 1134 (3rd Cir. 1983) likewise do not support Plaintiff's argument for the same reasons. Those cases involve exclusion of expert testimony under Rule 403 – exclusion of evidence for prejudice, confusion, waste of time or other reasons. Defendant agrees that exclusion under Rule 403 "must be applied evenhandedly."

US v. Sellers, 566 F.2d at 886. Here however, Plaintiff's expert's testimony was not excluded under Rule 403, but rather under Rule 702. Therefore these cases do not apply.

### V.    The Portion of Plaintiff's Motion in Limine Titled "Daubert Motion" is a Further Untimely and Improper Attempt to Circumvent the Court Order Regarding Daubert Motions.

At the end of his "Motion in Limine," Plaintiff titles a section "Daubert Motion." This purports to be an actual Daubert Motion that Plaintiff is attempting to sneak in, again in flagrant violation of the Court Order explicitly setting the deadline for Daubert Motions almost ten months ago. There is no real argument in this "Motion." Plaintiff merely cites Daubert case law, and claims to "challenge both the reliability and helpfulness of Defendant's expert." No specifics are given. Plaintiff further "moves the proponent of the expert testimony to show that Mr. Vellani's methodology by which he reached his conclusions is sufficiently reliable and that his proposed testimony at trial will assist the trier of fact." This does not raise any specific issue, and appears to be a summary of the issues alleged in the disguised Daubert Motion/Motion in Limine in the preceding paragraphs. Defendant has addressed those allegations above.

Defendant also notes that it is not a proper Daubert Motion to simply "move" the proponent of an expert to show the Daubert factors. Defendant has

already done that with the expert report, and Plaintiff had the opportunity to depose Defendant's expert to delve into the opinions and methodology further, as Defendant's counsel did. Plaintiff chose not to take that opportunity. Instead, Plaintiff attempts to challenge the Defendant's expert, out of time and with no good reason for the delay, without identifying specific issues. This is an improper and ineffective <u>Daubert</u> challenge, and if not stricken as untimely, should fail on the merits.

WHEREFORE Defendant respectfully submits that Plaintiff's Motion in Limine/<u>Daubert</u> Motion should be stricken as untimely, or should be denied for the reasons set forth above, and for other just relief as this Court may allow.

This 6th day of April, 2018.

Respectfully submitted,

/s/ Nicole C. Leet
Michael J. Rust
Georgia Bar No. 621257
Nicole C. Leet
Georgia Bar No. 133044
Attorneys for Defendant QuikTrip
Corporation

**Gray, Rust, St. Amand, Moffett & Brieske, L.L.P.**
1700 Atlanta Plaza
950 East Paces Ferry Road
Atlanta, Georgia 30326
404-870-7375 (Rust)

404-870-7434 (Leet)
404 870-7374 fax
e-mail:      mrust@grsmb.com
             nleet@grsmb.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ALAN E. ROBLES | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:16-CV-02050-MLB |
| | ) | |
| QUIKTRIP CORPORATION | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2018, copies of Defendant's Response to Plaintiff's Motion in Limine were electronically served with the Clerk of Court using the CM/ECF system which will automatically send notification of such filing to the following attorneys of record:

Parag Y. Shah
Elizabeth George
The Shah Law Firm
1355 Peachtree Street
Suite 1800
Atlanta, GA 30309

This 6th day of April, 2018.

/s/ Nicole C. Leet

22

Nicole C. Leet
Georgia Bar No. 133044
Attorney for Defendant QuikTrip
Corporation