IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ALAN E. ROBLES | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:16-CV-02050-MLB |
| v. | ) | |
| | ) | |
| QUIKTRIP CORPORATION | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE DEFENDANT'S EXPERT**

**COMES NOW** Plaintiff, **ALAN E. ROBLES**, by and through undersigned counsel in the above-styled case and replies to Defendant's Response to Plaintiff's Motion *in Limine* to Exclude Defendant's Expert [109], pursuant to Federal Rules of Evidence 403, 702, Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), and Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999). In support, Plaintiff offers the following:

**I.**

**TIMELINESS OF DEFENDANT'S MOTION**

Defendant argues that Plaintiff's Motion *in Limine* should not be heard because it is untimely. Plaintiff more fully responds to this argument in his Response to Defendant's Motion to Strike [114].

## II.

## DEFENDANT'S EXPERT HAS NOT SET FORTH RELIABLE OPINIONS THAT ARE RELEVANT TO THE ISSUES IN THE CASE

Defendant argues that its expert does not provide the same opinions as Plaintiff's expert. Specifically, (1) Defendant's expert does not provide an opinion on foreseeability; and (2) Defendant's expert opinions on security are different. Furthermore, Defendant argues that its expert's opinions are reliable and relevant.

### A. DEFENDANT'S EXPERT OFFERS THE SAME OPINIONS ON FORESEEABILITY AND SECURITY AS PLAINTIFF

Defendant goes through each opinion of its expert and attempts to distinguish why each does not offer an opinion on foreseeability or is "not the same" opinion on security. Defendant attempts to use semantics to distinguish their expert from Plaintiff's expert, with the overall conclusion being that both experts are opining the same thing with contrary conclusions.

#### 1. Defense Expert's First Opinion

Defendant starts with distinguishing Mr. Vellani's first opinion, which is "a pattern of crimes, similar to the subject incident, did not exist at the QuikTrip," by stating that Mr. Vellani is simply providing an analysis of the crime on the premises and opinions on criminal patterns. ([109] at 4, see also [28] at 9-10). Plaintiff's expert may have reached the opposite conclusion but did it with the same methods. An

analysis of crime on the premises is tantamount to giving an opinion as to whether crime activity on the Property was foreseeable. Mr. Vellani certainly is not analyzing the patterns of crime on the premises for any other reason than to determine the foreseeability of future crimes, including the one at issue, at the Property.

Mr. Villines does the same in his report ([26] at 2) and in his deposition, stating that a pattern of crimes that are similar to the subject incident is determined by analyzing the "opportunity structure" of the crime. (See <u>Original Transcript of Deposition of John Villines</u> ("Villines Depo."), [75-3] at 42-43; 48). Determining the opportunity structure of crime is simply a method of crime analysis. In making his analysis, Mr. Villines relied "upon the history of reported events associated with the property," (<u>Id</u>. at 48) and methodologies including "consideration of…prior reported events at the property and surrounding area" ([26] at 2). Despite the Defendant's attempts to distinguish Plaintiff expert's report, this is the same analysis and methodology used by Mr. Vellani, as he makes a "crime analysis" of the Property which takes into account "relevant crimes on the premises" and "relevant crimes in the immediate vicinity of the facility," in conjunction with the FBI and Bureau of Justice Statistics. ([28] at 5). Both experts cite to The International Association of Professional Security Consultants (IAPSC) Forensic Methodology for support as well. (See [26] at 2 and [28] at 5).

Thus, if Defendant's expert is permitted to testify to, as the Defense calls it, "crime risk of the property," then Plaintiff should be entitled to rebut Defendant's theory with his expert's "opportunity structure" theory; or, in the alternative, both opinions should be excluded.

### 2. Defense Expert's Second Opinion

Defendant argues that Mr. Vellani's second opinion that "the subject property had a low risk of violent crime" goes to an analysis of the crime on the premises and the crime risk. ([109] at 4). The word "risk" means "possibility of loss or injury." *Merriam-Webster.com*. Merriam-Webster, 2018. Web. 10 April 2018. In other words, **foreseeability**. See id. ("Foreseeability…lying within the range of which forecasts are possible"); ([26] at 2) ("[F]oreseeability refers to the, "anticipation, recognition and appraisal" factors in crime prevention").

Mr. Vellani is concluding that the Property had a low risk of violent crime based on his crime analysis. ([28] at 10; [109] at 4). Said another way, Mr. Vellani determined that the "risk" i.e., the probability or foreseeability, of violent crime at the Property was low. ([109] at 4). This is no different than Mr. Villines' analysis that, "[b]ased on prior reported events at the property, violent crime against persons was reasonably foreseeable on the premises…" ([26] at 16); (Villines Depo., [75-3] at 49) ("[T]he opportunity structure that I mentioned where one looks for a history

of events which would inform the analysis in such a way that it's reasonable to predict that there will be future events of a similar nature or future events of a dissimilar nature because of the opportunity structure."). Again, this is the same analysis arriving at the opposite conclusion.

If Defendant's expert is permitted to testify to the "crime risk of the property," then Plaintiff's expert should be entitled to rebut Defendant's theory with Plaintiff's "opportunity structure" theory (which is just a specific method of determining crime risk of the Property and uses the same factors as the Defense expert); or, in the alternative, both opinions should be excluded.

### 3. Defense Expert's Third Opinion

The Defense expert's third opinion is about the relationship between the shooter and Plaintiff. Defendant claims that its expert makes this opinion based on his analysis of the incident and the Bureau of Justice Statistics crime categories. ([109] at 5). Plaintiff's expert provides the same opinion about the relationship between the shooter and Plaintiff in his deposition based on his analysis of the incident and also citing the Bureau of Justice Statistics. (See Villines Depo., [75-3] at 39-41) ("[Bureau of Justice Statistics' definition] also says that it's a…stranger-on-stranger crime if the victim says the person was a stranger…and…there's plenty of definition by Alan Robles that he did not know this person…. There's not even

an interpersonal relationship between the shooter and the victim…"). The Defense expert's opinion is not only the same, but he basis his opinion on the same information and statistics definition as Plaintiff's expert. ([109] at 5; [28] at 6).

If Defendant's expert is permitted to opine as to the relationship of the shooter and the Plaintiff, then Plaintiff's expert should be entitled to rebut the same; or, in the alternative, both experts should be excluded.

### 4. Defense Expert's Fourth Opinion

The Defense expert's fourth opinion is an analysis of the mental state of Plaintiff. ([109] at 5). Mr. Vellani is not an expert in the area of behavioral sciences, and evidence to the contrary is not stated in his CV, his report, or in the Defense's Brief. (See generally, [28] and [109]). Whether Plaintiff was able to leave the situation or chose to remain is not an opinion Mr. Vellani can provide based on him "analyzing crime risk and [his] training on security." ([109] at 5). If Defendant's expert is permitted to testify as to the behavior of the Plaintiff, then Plaintiff's expert should be able to rebut that testimony as laid out in his deposition: "[Plaintiff] had a gun presented, he chose to try to go to the safety within the store and he was shot, he didn't try to overpower the shooter, he tried to escape what he perceived is the danger, is my interpretation." (Villines Depo. at 111; lines 3-7). In the alternative, both opinions should be excluded.

### 5. Defense Expert's Fifth Opinion

Defendant's expert in his fifth opinion states that the response time by police for loitering calls are not the same as shooting calls and therefore it is unlikely that the police would have responded prior to the shooting. ([109] at 5). Plaintiff's expert also opined on response times by stating that the response time for loitering is not the same as a shooting and that the response time from when the firearm became visible would have been sufficient for the police to arrive before the shooting. (Villines Depo. at 91-92).

As such, if Defendant's expert is allowed to opine as to response time, then Plaintiff's expert should be entitled to rebut the same; or, in the alternative, exclude both opinions.

### 6. Defense Expert's Sixth Opinion

The Defense expert's sixth opinion states that QuikTrip employees responded timely *after* the shooting. ([109] at 6). The issue in this case for the jury is whether QuikTrip through its employees responded timely to threats *before* the shooting given QuikTrip's policies and procedures. Thus, such opinion has no relevancy to the matter at hand and only acts to confuse the jury. Plaintiff stipulates that QuikTrip employees responded timely after the shooting; however, that is not the issue at hand. Therefore, the opinion of Defendant's expert should be excluded in this matter.

## 7. Defense Expert's Seventh Opinion

The Defense expert's seventh opinion is in regards to the "security posture" at the QuikTrip based on the "low crime risk." ([109] at 6; [28] at 10). This is a foreseeability opinion as it correlates security needs with what should be anticipated (i.e., if there is a "low crime risk," the "risk" or "foreseeability" of crime at the property is low; thus, less security is needed). Mr. Vellani clearly states in his report that "the subject property's crime **risk**" was evaluated using four factors of previous crimes at or around the Property – "similarity, frequency, recency, and proximity." ([28] at 5). He used the "similarity, frequency, recency and proximity of past crimes at or around the Property to determine the "risk" of crime which is no different than saying the data was used to determine the "foreseeability" of crime.

Plaintiff's expert also opined on the security posture of the QuikTrip based on risk. Specifically, Mr. Villines stated, "they were aware of there being crimes occurring in the parking lot that triggered no additional security measures of surveilling the parking lot and no criteria-based threshold for when the alarm should be pushed. It was a blind eye." (Id. at 101-102). In addition, he stated that based on the risk at this QuikTrip, a security guard would have been appropriate. (Id. at 110). As such, if Defendant's expert is allowed to opine as to the "security posture," then Plaintiff's expert should be entitled to rebut the same; or, in the alternative, both

experts' opinions should be excluded.

### 8. Defense Expert's Eighth Opinion

The Defense expert's final opinion is that the, "security at the QuikTrip, or lack thereof, did not cause the subject incident." ([109] at 6). Plaintiff's expert provides a similar opinion with a different conclusion. In his deposition, Plaintiff's expert provides a review of the security and states that, "it is my opinion that more likely than not had these failures been corrected, this would have been prevented." (Villines Depo. at 109-110; lines 25; 1-2). Plaintiff's expert bases his opinion on his analysis of the incident, crime risk analysis, criminological studies, and his experience regarding security management and consulting (Id. at 98-110) just as the Defense expert does ([109] at 6). As such, if Defendant's expert is allowed to opine as to causation, then Plaintiff's expert should be entitled to rebut the same; or, in the alternative, both opinions should be excluded.

### B. DEFENDANT'S EXPERT OPINIONS ARE NOT RELIABLE

Defendant argues that Mr. Vellani's expert opinions are "reliable" unlike Mr. Villines's because he "performed a crime risk analysis of the subject QuikTrip as outlined in his report, pursuant to an accepted, reliable forensic methodology." (Id. at 10). Defendant goes on to argue that because Mr. Vellani, "combined that with reliable tools and applied an established body of security assessment and

management techniques and his extensive twenty-two years' experience in the field to form his opinions." (Id.). In his report, Mr. Vellani states that he has, "over 22 years of security management and forensic security consulting experience." ([28] at 3). Further, Mr. Vellani states that his "crime analysis" of the "crime risk" is based upon "four factors – similarity, frequency, recency, and proximity" of "relevant crimes on the premises" and "relevant crimes in the immediate vicinity of the facility…" (Id. at 5). He notes that he uses the "International Association of Professional Security Consultants (IAPSC) Forensic Methodology," which is a "peer reviewed and consensus-based guideline promulgated by a recognized security industry association." (Id. at 5). In his analysis Mr. Vellani relies upon "the Clayton County Police Department (CCPD)..Incident Reports…for January 1, 2012 to September 5, 2015" (Id. at 7), "deposition testimony by Mr. Robles…and video surveillance" from QuikTrip (Id. at 9).

Mr. Villines, in his report, states that he has been "involved in the study of crime, crime causation and crime prevention for more than 30 years…." ([26] at 2). He basis his "crime prevention" analysis (Id.) on "Clayton County Police Department incident reports and calls for service…at the subject premises…" (Id. at 14). Further, Mr. Villines states that in his analysis of this case he used, among many other guidelines, the "IAPSC Best Practice #2: Forensic Methodology." ([26] at 2).

In his analysis, Mr. Villines relies upon, among many other things, "Clayton County Police Dept. Incident Reports" ([26-2] at 1), the deposition of Alan Robles (<u>Villines Depo.</u>, p. 7-17), and "[v]ideo [s]urveillance of Quiktrip" ([26-2] at 2).

Thus, if Defendant's line of argument is applied across the board, Mr. Vellani's opinion can also be deemed unreliable as they are given by an expert with similar qualifications, based on similar methods, and a review of the same, if not less, information. Mr. Vellani's opinion is not reliable and should be excluded as it is based on the same exact things as Mr. Villines's opinion.

### C. DEFENDANT'S EXPERT OPINIONS ARE NEITHRE RELEVANT NOR HELPFUL TO THE ISSUES IN THE CASE

Defendant attempts to argue that the field of "crime prevention" is so specialized that a lay person is not able to understand it without expert testimony. With each opinion, the Defendant attempts to distinguish why such expert testimony is needed:

1. Opinion One: Defendant states that the jury will not understand whether the "pattern" of crimes are similar;

2. Opinion Two: the jury will not understand the "tools to assess crime risk;"

3. Opinion Three: the jury will not understand the difference between strangers and non-strangers;

4. Opinion Four: the jury will not understand how a person should respond

to a security threat;

5. Opinion Five: the jury will not understand that police respond to different crimes with different levels of urgency;

6. Opinion Six: the jury will not understand what a reasonable amount of time is to call 911 after someone has been shot;

7. Opinion Seven: the jury will not understand whether a place has enough security, or not, given the crimes that have occurred at that place; and

8. Opinion Eight: the jury will not understand whether security or the lack thereof was the reason the Plaintiff was shot.

([109] at p. 12-17).

In this section of Defendant's brief ([109] at 12-17), there is no legal authority cited that such expert testimony on these types of opinions assist the trier of fact. In fact, the law across the country seems to be to the contrary. See Bethea v. Bristol Lodge Corp., No. CIV.A. 01-612, 2002 WL 31859434 (E.D.Pa. Dec. 18, 2002) ("[S]uch conclusions were 'common sense,' [and] the Court determines that the proffered opinion poses no benefit in assisting 'the trier of fact to understand or determine a fact in issue'"); Maguire v. National Railroad Passenger Corp., No. 99 C 3240, 2002 WL 472275 (N.D.Ill. March 28, 2002) ("[i]t is within an average juror's comprehension that security personnel and cameras generally improve

safety"); Starnes v. Sears Roebuck & Co., No. 01-2804, 2005 WL 3434637 (W.D.Tenn. Dec. 14, 2005) ("In addition, the Court finds that [Hudson's] 'expert opinion' will not assist the trier of fact"); see also Ortiz v. New York City Hous. Auth., 22 F.Supp.2d 15, 24 (E.D.N.Y .1998) (Concluding that the consequences of the failure to maintain reasonable security in public housing complex, resulting in attack on resident, were within the understanding of the average juror and did not require expert testimony); aff'd 198 F.3d 234 (2nd Cir. 1999); Fante v. Trump Taj Mahal Assoc., P' ship, Inc., 1996 WL 263652, at *5 (N.J.Super.App.Div.1996) (claims by woman trampled in casino allegedly due to poor crowd control and security were "easily understood, and an understanding of dangers specific to a crowded casino cannot be deemed an uncommon experience, especially for Atlantic County jurors"); Van Blargan v. Williams Hospitality Corp., 754 F.Supp. 246, 249 (D. Puerto Rico 1991) (concluding that "hotel security is not a subject which lends itself to expert testimony" because "it deals with common occurrences that the jurors have knowledge of through their experiences in everyday life"); Birge ex rel. Mickens v. Dollar Gen. Corp., 04-2531 B/P, 2006 WL 5175758, at *11 (W.D. Tenn. Sept. 28, 2006) ("The jury is capable of considering the prior history of crime and other incidents at Dollar General, and determining whether the attack was foreseeable and whether Dollar General breached a duty, if any, owed to Birge. Thus,

Tatalovich's proffered opinion that there was a **"pattern of crime"** at the Dollar General store and that the attack was foreseeable to Dollar General is excluded."); Mu v. Omni Hotels Mgmt. Corp., 882 F.3d 1, 11 (1st Cir. 2018), review denied, 885 F.3d 52 (1st Cir. 2018) ("Determining whether or not the Omni was negligent in reacting to the threat that its recent evictees posed, however, is a comparatively straightforward endeavor. We do think that a jury would be capable, without an expert's assistance, of determining the proper standard of care and measuring Omni's conduct against that standard.").

There is nothing that the Defendant's expert will testify to that will assist the trier of fact. All of his opinions are based on "common sense" and "common experience" on issues which are within the ken of the average juror. As such, Plaintiff moves to exclude the testimony of Defendant's expert.

### D. PLAINTIFF DOES NOT CITE TO A PROVERB, BUT CITES TO ACTUAL CASE LAW

In part IV. of the Response Brief, Defendant would have this Court believe that Plaintiff is citing to a "proverb" as a basis to grant its motion instead of actual case law and statutes. ([109] at 17). Plaintiff does quote the proverb – what's good for the goose is good for the gander – and then goes on to support such contention with case law. Plaintiff supports such contention with ample case law, and not just the few cases Defendant chooses to discuss. (See Plaintiff's Motion *in*

*Limine* [105]). As such, Plaintiff moves to exclude the testimony of Defendant's expert.

### III.

### CONCLUSION

**WHEREFORE,** in consideration of the foregoing, Plaintiff Alan Robles respectfully requests this Court **GRANT** Defendant's Motion *in Limine* to Exclude the Testimony of Defendant's Expert Karim Vellani; ***or in the alternative***:

1. Accept Plaintiff's Motion *in Limine* as an Out of Time *Daubert* Motion and conduct a pretrial hearing where Plaintiff may *voir dire* Defendant's expert for the Court to determine whether his testimony should be admissible; or

2. Allow Plaintiff's expert to testify as a rebuttal witness at the trial of the above-styled case.

This, the 13th day of April, 2018.

Respectfully Submitted,

_____
Parag Y. Shah, esq.
Georgia Bar No. 648177
Attorney for Plaintiff

The Shah Law Firm
1355 Peachtree Street, Suite 1800
Atlanta, Georgia 30309
(404) 844-4874
(404) 433-1136 (cell)
(404) 410-6933 (fax)
shah@shahlawfirm.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ALAN E. ROBLES ) | |
| ) | |
| Plaintiff, ) | Case No. 1:16-CV-02050-WSD |
| v. ) | |
| ) | |
| QUIKTRIP CORPORATION ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## **LR 7.1(D) CERTIFICATE OF FONT COMPLIANCE**

I hereby certify that the foregoing has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C), Northern District of Georgia, specifically Times New Roman 14 point.

_____
Parag Y. Shah, esq.
Georgia Bar No. 648177
Attorney for Plaintiff

The Shah Law Firm
1355 Peachtree Street, Suite 1800
Atlanta, Georgia 30309
(404) 844-4874
(404) 433-1136 (cell)
(404) 410-6933 (fax)
shah@shahlawfirm.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| ALAN E. ROBLES | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:16-CV-02050-MLB |
| v. | ) | |
| | ) | |
| QUIKTRIP CORPORATION | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## **CERTIFICATE OF SERVICE**

I, the undersigned counsel for Plaintiff, do hereby certify that I have this day electronically filed the within and foregoing pleading in the above-captioned civil action with the Clerk of Court using the CM/ECF system which will automatically send notification of such filing to the following attorneys of record:

**Nicole C. Leet**
**Gray, Rust, St. Amand, Moffett & Brieske, L.L.P.**
1700 Atlanta Plaza
950 East Paces Ferry Road
Atlanta, Georgia 30326
404-870-7434 (Leet)
404-870-7374 fax
E-mail: nleet@grsmb.com

This, the 13th day of April, 2018.

_____
Parag Y. Shah, esq.
Georgia Bar No. 648177
Attorney for Plaintiff

The Shah Law Firm
1355 Peachtree Street, Suite 1800
Atlanta, Georgia 30309
(404) 844-4874
(404) 433-1136 (cell)
(404) 410-6933 (fax)
shah@shahlawfirm.com
www.shahlawfirm.com