# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ALAN E. ROBLES, <br><br> Plaintiff, <br><br> v. <br><br> QUIKTRIP CORPORATION <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 1:16-CV-02050-MLB <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

### AFFIDAVIT OF KARIM VELLANI

COMES NOW before the undersigned officer duly authorized to administer oaths, Karim Vellani, who, upon being duly sworn, states as follows:

1.

I, KARIM VELLANI, am of sound mind and am over the age of 18. I am laboring under no disability and am competent to testify. I give this affidavit based upon my personal, firsthand knowledge to be used in the above-styled action. If called upon to testify at a trial, my testimony would be the same as set forth herein.

2.

I am the President of Threat Analysis Group, LLC, an independent security consulting firm. I am Board Certified in Security Management (CPP), a Board Certified Security Consultant (CSC), have over 22 years of security management, crime analysis, and forensic

security consulting experience, and have a Master's Degree in Criminal Justice Management. I have authored two books, <u>Applied Crime Analysis</u> and <u>Strategic Security Management</u>, and have contributed to a number of other security related books and journals.

3.

I specialize in crime analysis and security risk assessment and mitigation. I developed a crime analysis methodology that utilizes the Federal Bureau of Investigation's (FBI) Uniform Crime Report coding system and a proprietary software application called CrimeAnalysis. The methodology was published in <u>Applied Crime Analysis</u>. I have assessed crime threats at thousands of facilities across the United States. I am also a Technical Committee Member on the Risk Assessment Standard Development Committee for the American Society for Industrial Security - International (ASIS).

4.

As an Adjunct Professor at the University of Houston - Downtown, I taught graduate courses in Security Management and Risk Analysis for the College of Criminal Justice's Security Management Program. I have also trained Police and Security Officers in weapons and use of deadly force and profiling and assisted in the development of maritime security training curriculum compliant with ISPS Code and the United States Coast Guard under the Maritime Transportation Security Act.

5.

I am a member of the International Association for Healthcare Security & Safety (IAHSS), the International Association of Professional Security Consultants (IAPSC), ASIS-International, the American Society of Criminology (ASC), and the International Association of Crime Analysts (IACA).  I served as President of the IAPSC in 2008.

6.

In developing my opinions in this matter, I adhered to the *Forensic Methodology*[1] promulgated by the International Association of Professional Security Consultants.  The *Forensic Methodology* is a consensus-based and peer-reviewed Best Practice for the guidance of and voluntary use by businesses and individuals who deal or may deal with the issues addressed in the context of third-party premises security litigation.

7.

My first and second opinions are "A pattern of crimes, similar to the subject incident, did not exist at the QuikTrip" and "The subject property had a low risk of violent crime."  In arriving at these opinions, I reviewed Clayton County police reports and QuikTrip incident reports for the subject property.  I analyzed this data using my training and experience.  My training includes a Bachelor of Science degree in Criminal Justice with a specialization in Law Enforcement and a Master of Science degree in Criminal Justice Management.  For over 22 years, I have assessed crime risks for private sector companies and municipal, county, and state governments.  I have

---

[1] https://iapsc.org/about-us/best-practices/

also written two books, Applied Crime Analysis and Strategic Security Management, which address crime risk assessments and mitigation. Consistent with my training and experience, I applied a methodology developed by the Federal Bureau of Investigation (FBI) called the Uniform Crime Reporting methodology.[2] The FBI's Uniform Crime Reporting methodology was originally developed in 1929. This methodology is commonly used by criminologists, security consultants, and organizations to assess crime risk and is referenced in the *Forensic Methodology* promulgated by the International Association of Professional Security Consultants to which I adhere. I applied the definition of crime pattern developed by the International Association of Crime Analysts and published in their book entitled Exploring Crime Analysis[3] to determine if a *crime pattern* existed at the QuikTrip. The assessment of QuikTrip's crime risk using the FBI's Uniform Crime Reporting methodology and definitions published by the International Association of Crime Analysts is consistent with experts in the security industry.

8.

My third opinion is "The subject incident was an interpersonal, non-stranger dispute that resulted in the shooting of Alan E. Robles by an individual known to him or known to his family." In arriving at this opinion, I reviewed Clayton County Police Report Number 15060438 for the subject incident. I analyzed this Police Report 15060438 using my training and experience. In that report, the Clayton County Police document an interview with both Mr. Robles and Mr. Robles' brother Cesar Tapia, both of whom informed the Clayton County Police

---

[2] https://ucr.fbi.gov/additional-ucr-publications/ucr_handbook.pdf/view
[3] https://www.iaca.net/exploring_crime_analysis.asp

that Mr. Robles was shot by a cousin. The Clayton County Police Report narrative further indicates that Mr. Robles was shot by someone who was with Mr. Robles prior to arriving at the QuikTrip. I relied upon a methodology developed by the U.S. Department of Justice's Bureau of Justice Statistics[4] which defines two crime classifications based on the relationship of the offender and victim. These two classifications are "Stranger" crimes and "Non-Stranger" crimes. Reviewing the police report for the subject incident and relying on classifications developed by the U.S. Department of Justice is consistent with my training and experience and required by the International Association of Professional Security Consultants (IAPSC) *Forensic Methodology* to which I adhere, and consistent with experts in the security industry.

9.

My fourth opinion is "Mr. Robles chose to remain at the scene despite his knowledge that a gun was present, despite having had the gun pointed at his back, and despite having ample opportunities to remove himself from the area." In arriving at this opinion, I reviewed the QuikTrip surveillance video and other discovery available in this matter. I reviewed this material using my training and experience. My training includes a Bachelor of Science degree in Criminal Justice with a specialization in Law Enforcement and a Master of Science degree in Criminal Justice Management. During my 22 years as a security consultant, I have reviewed commonly accepted practices for violent crime response and trained people on the appropriate response to violent crime (e.g. robbery response, active shooter response). This experience allowed me to evaluate Mr. Robles' response to the danger that he was aware of. Reviewing the

---

[4] https://www.bjs.gov/index.cfm?ty=tp&tid=941

QuikTrip surveillance video for the subject incident and police department records is consistent with my training and experience, is required by the International Association of Professional Security Consultants (IAPSC) *Forensic Methodology* to which I adhere, and consistent with experts in the security industry.

10.

My fifth opinion is "Had QuikTrip become aware of "loitering" prior to the gunshots, it is unlikely that police would respond prior to the shooting. Response times to loitering calls are not the same as response times to shooting calls." In arriving at this opinion, I reviewed the QuikTrip surveillance video, the Deposition of Alan E. Robles, and Clayton County Police Department records. Based on that information, I was able to determine how long Mr. Robles was aware of the gun prior to the shooting and the fact that he did not attempt to leave the scene once he became aware of the danger. I was also able to determine that Clayton County Police Department's average response time to loitering calls (Priority 3 calls) was over six minutes (6.14 minutes) in 2015.[5] Reviewing the QuikTrip surveillance video for the subject incident, police department records, and the Plaintiff's deposition is consistent with my training and experience, is required by the International Association of Professional Security Consultants (IAPSC) *Forensic Methodology* to which I adhere, and consistent with experts in the security industry.

---

[5] Clayton County Police Department Response Time Report

11.

My sixth opinion is "QuikTrip employees responded in a timely manner after the gunshots by calling the police." In arriving at this opinion, I reviewed the QuikTrip surveillance video and the associated audio. Based on that information and consistent with my training and experience, I was able to determine that QuikTrip was not aware of any suspicious activity prior to the shooting. Reviewing the QuikTrip surveillance video and associated audio for the subject incident is consistent with my training and experience and my experience training individuals and companies in violent crime response, is required by the International Association of Professional Security Consultants (IAPSC) *Forensic Methodology* to which I adhere, and consistent with experts in the security industry.

12.

My seventh and eighth opinions are "The security posture of the QuikTrip was appropriate in light of the low crime risk" and "Security at the QuikTrip, or lack thereof, did not cause the subject incident." These opinions are based on the site inspection I conducted of the QuikTrip during both day and night time hours, my evaluation of Clayton County Police Department crime records for the QuikTrip and QuikTrip's internal security records. Further, as a security consultant for over 22 years, I have assessed crime risks at retail stores, convenience stores, and gas stations and other properties like QuikTrip. During that time, I have reviewed hundreds of security guidelines, standards, best practices, and crime prevention research, most of which is directly applicable to properties like QuikTrip. This includes research commissioned by the National Association of Convenience Stores, guidelines published by the Occupational

Safety and Health Administration, and best practices published by the American Society of Industrial Security – International. These security guidelines, standards, best practices, and crime prevention research allowed me to understand and evaluate the standard of care for the QuikTrip. Reviewing the Clayton County Police Department crime records, QuikTrip's internal security records, and relevant crime prevention research and security guidance for properties like QuikTrip is consistent with my training and experience, is required by the International Association of Professional Security Consultants (IAPSC) *Forensic Methodology* to which I adhere, and consistent with experts in the security industry.

FURTHER AFFIANT SAYETH NOT

This 17th day of April, 2018.

_____
KARIM VELLANI

Sworn to and subscribed before me
this 17 day of April, 2018.

_____
Notary Public
My Commission Expires:



FALMATA IBRO
Notary Public, State of Texas
Comm. Expires 01-11-2022
Notary ID 128143267